No. 42,610

Dan B. Shields and E. K. W. Shields, *Appellants*, v. Lorene S. Fink, Executrix of the Estate of Howard D. Fink, deceased, Lorene S. Fink, individually, Howardine Faust, Arnold Fink, Eric E. Smith, and the unknown heirs, creditors and assigns of Howard D. Fink, deceased, and the unknown guardians and trustees of such of the unknown defendants as are minors, or are in any wise under legal disability, if any, *Appellees*.

(372 P. 2d 252)

Opinion filed June 9, 1962.

*Marvin E. Thompson,* of Russell, argued the cause, and *George W. Holland* and *Clifford R. Holland, Jr.,* both of Russell, were with him on the brief for the appellants.

*Richard M. Driscoll,* of Russell, argued the cause, and *Jerry E. Driscoll* and *Eric E. Smith,* both of Russell, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in the district court to foreclose an alleged equitable mortgage covering an undivided 1/16th interest in a producing oil and gas lease. Appeal has been duly perfected from an order of the district court of Russell County, Kansas, entered on the 10th day of April, 1961, sustaining a demurrer to the appellants' petition and denying their application for the appointment of a receiver.

The controlling question is whether the district court has jurisdiction to entertain the action. Embraced within the foregoing question is whether, on the facts in this case, the probate court has exclusive original jurisdiction to foreclose an equitable lien against personal property in a decedent's estate.

The petition alleged in substance that Howard D. Fink died testate on the 27th day of December, 1960, a resident of Russell County, Kansas, leaving surviving him as his sole and only heirs at law the defendant Lorene S. Fink, his wife, the defendant Howardine Faust, his daughter, and the defendant Arnold D. Fink, his son. The decedent's last will and testament dated December 19, 1960, was duly admitted to probate and record in the probate court of Russell County, Kansas, on the 17th day of January, 1961. On that day Lorene S. Fink was appointed and qualified as executrix of said estate and continues to be the duly appointed, qualified and acting executrix of said estate.

The petition further alleged that on the 14th day of September, 1959, Howard D. Fink for a valuable consideration executed and delivered to Dan B. Shields and E. K. W. Shields (plaintiffs-appellants) his promissory note in the amount of $12,000, payable on the 14th day of September, 1960, with interest thereon at the rate of six percent per annum.

Thereafter, Howard D. Fink on or about the 24th day of September, 1959, executed an assignment of his undivided $1/16$th working interest in the Heim oil and gas lease dated March 26, 1952, on a described quarter section of land in Russell County, Kansas. This assignment was subject to its proportionate part of an overriding royalty interest of $1/16$th of $7/8$ths of all oil and gas which may be produced from the land under said lease. This instrument was marked as an exhibit and attached to the petition and incorporated therein by reference.

The petition alleged that on the 24th day of September, 1959, Howard D. Fink delivered said assignment to Eric E. Smith, his attorney and agent, and authorized him to hold such assignment until the aforesaid note, including interest thereon, should be paid in full; that on September 25, 1959, Smith in accordance with instructions from Howard D. Fink duly acknowledged his holding of said assignment by a letter to the plaintiff Dan B. Shields, the material portion of which reads:

"Mr. Howard Fink of Russell, Kansas has explained to me in detail a recent loan which you made to him for $12,000.00, and has made the following arrangements in order to secure your position.

"Mr. Fink has delivered to this office an assignment of his interest in the Heim oil and gas lease located in Russell County, Kansas, and has instructed me to record the assignment in your name in the event of his death prior to his making full payment of the loan including interest. Mr. Fink has advised me that he intends to make every effort to repay this loan within the shortest possible time as he has no desire to violate your confidence.

"The above mentioned assignment of oil and gas lease will be held in my office until such time as the loan, including interest, has been paid in full and evidence of payment received."

The petition alleged that on the 19th day of October, 1960, the plaintiff Dan B. Shields granted an extension of six months for payment of the note, and that on the 20th day of October, 1960, interest due upon the note was paid to September 14, 1960. The petition then states:

"8. (a) That the defendant Eric E. Smith holds in his possession the original executed copy of the aforesaid assignment of oil and gas lease and refuses to

deliver the same to these plaintiffs; that the original copy thereof has not been acknowledged; that it does not bear the name of the assignee, but was executed by the said Howard D. Fink and delivered to the said Eric E. Smith, as his agent and attorney, as security for the promissory note above described; that Eric E. Smith holds said original assignment for instructions by this court as to whom he should deliver the same;

"(b) That said assignment has not been offered for recording in the office of the Register of Deeds of Russell County, Kansas; that the same is not subject to recording in the office of said Register of Deeds in that it has not been acknowledged in the manner provided by law. That the mortgage registration fee, payable upon the recording of mortgages, has not been paid upon the aforesaid instrument in that it is not subject to recording and plaintiffs do not have possession of said instrument; that plaintiffs do hereby tender and pay to the Clerk of the District Court for the benefit of Russell County, Kansas, the sum of Thirty Dollars ($30.00) in payment of the mortgage registration fee which may be due on the recording of the original copy of the aforesaid assignment of oil and gas lease interest.

"9. That no part of the aforesaid note to these plaintiffs from Howard D. Fink has been paid, except the interest as hereinabove alleged; that the whole of said note is now due and owing; that the aforesaid assignment of oil and gas lease interest in the possession of Eric E. Smith is a mortgage and default has occurred in the payment of the note for which the same was given as security.

"10. That the defendants above named, except the defendant Eric E. Smith, claim some right, title or interest in and to the aforesaid oil and gas lease interest described in said assignment, but that whatever right, title or interest said defendants have is subject to and inferior to the claim, lien and mortgage of these plaintiffs; that plaintiffs make no claim of personal judgment against any of the defendants."

The prayer sought judgment for the amount due on the note, an adjudication that the assignment be declared a mortgage in favor of the plaintiffs, and an adjudication that the mortgage be foreclosed and the oil and gas lease interest be sold as provided by law and the proceeds applied to the indebtedness.

Thereafter, on the 7th day of April, 1961, the plaintiffs filed their application for the appointment of a receiver. This application incorporated the allegations of the petition by reference and alleged the oil and gas lease interest covered by the mortgage was producing monthly income to the executrix of the estate of Howard D. Fink, deceased, of approximately $175 with operating expenses attributable to said interest of approximately $50 per month. It alleged the leasehold interest was probably insufficient to discharge the mortgage debt in that the reasonable value of said leasehold was not in excess of $5,000.

It further alleged the operator of the lease had the right to

subject the interest in the leasehold to a lien for its proportionate share of the expenses incurred in operating the lease, and in such further amounts as may be attributable to such interest during the pendency of the action, if the same should not be paid; and that by reason thereof the leasehold interest, covered by the plaintiffs' mortgage, was in danger of being lost or materially injured.

Lorene S. Fink, individually and as executrix of the estate of Howard D. Fink, deceased, filed a joint and separate demurrer to the petition. After hearing and argument the district court sustained the demurrer and denied the application for the appointment of a receiver.

An oil and gas lease conveys no interest in land but is merely a license to explore and is personal property, an incorporeal hereditament—a profit *a prendre*. (*Connell v. Kanwa Oil Inc.*, 161 Kan. 649, 170 P. 2d 631; and *Denver National Bank v. State Commission of Revenue & Taxation*, 176 Kan. 617, 272 P. 2d 1070.) The same is true of an undivided fractional interest in an oil and gas lease, as here.

For purposes of a demurrer the allegations of the petition are presumed to be true, including the allegations that Howard D. Fink died testate on the 27th day of December, 1960, and that the defendant, Lorene S. Fink, was the duly appointed, qualified and acting executrix of the decedent's estate, which was in the process of administration in the probate court of Russell County, Kansas, on the date the petition was filed.

In the absence of allegations to the contrary it is presumed the executrix complied with the law and as of December 27, 1960, took possession of the assets of the decedent's estate, including the undivided 3/16th interest in the oil and gas lease here in question. It was the obligation of the executrix under the probate code to protect the creditors of the decedent as well as his heirs, devisees and legatees. It may therefore be said that when the petition herein was filed on the 25th day of March, 1961, the executrix had inventoried the undivided working interest of the decedent in the oil and gas lease here in question, and was holding the possession and administering the same as an asset of the estate. Thus, when the instant action was filed in the district court of Russell County, the probate court of Russell County had long since assumed and was then exercising jurisdiction over the entire estate of the decedent, including the decedent's interest in the property here in question.

The appellants assert the facts alleged in the petition disclose the existence of an equitable mortgage, and contend the district court has jurisdiction of actions to foreclose equitable mortgages created by a decedent against property owned by him at the date of his death. They rely upon *Hill v. Hill*, 185 Kan. 389, 345 P. 2d 1015, which they contend is squarely in point. We think the trial court properly distinguished the *Hill* case in the journal entry announcing its decision. There the court was confronted with an equitable purchase money mortgage on real estate, title to which was taken by the decedent during his life in joint tenancy with his wife. Upon the decedent's death legal title to the property passed to the decedent's widow by survivorship and not to his estate. As the opinion progresses other facts will be discussed and decisions cited which readily distinguish the instant case from that of *Hill v. Hill*, supra.

It must be conceded that since 1868 general original jurisdiction has been conferred on the district court as to all matters not otherwise provided by law. (G. S. 1961 Supp., 20-301.) But the probate code enacted by the legislature in 1939 made material changes in the law providing for administration of decedents' estates.

The probate court under the provisions of the Kansas probate code is granted original jurisdiction and general powers with respect to certain definitely enumerated matters pertaining to the administration of decedents' estates. (G. S. 1949, 59-301.) Included in the general grant of jurisdiction and powers to the probate court is contained both authority and direction to exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such court. (G. S. 1949, 59-301 [12].)

It was the intent and purpose of the framers of the Kansas probate code, and of the legislature which enacted it, to grant to the probate court exclusive original jurisdiction over all matters incident and ancillary to the control, management, administration, settlement and distribution of decedents' estates, including the exhibition and establishment of claims and irrespective of whether those claims be denominated legal or equitable, except as to any matter over which the probate code expressly confers concurrent jurisdiction upon the district court.

Decisions construing the force and effect of the probate code enacted in 1939 and discussing the various provisions which support the foregoing statements are *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d

438; *Egnatic v. Wollard,* 156 Kan. 843, 137 P. 2d 188; *Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386; *Gantz v. Bondurant,* 159 Kan. 389, 155 P. 2d 450; *Searight v. Chor,* 170 Kan. 271, 225 P. 2d 118; and authorities cited in these decisions.

Language used in *Egnatic v. Wollard,* supra, which bears directly upon the facts in the instant case is as follows:

". . . it has been definitely and finally determined that where a party has an adequate remedy for equitable relief in the probate court and that court is exercising its jurisdiction, such party may not invoke the jurisdiction of the district court. The rule announced simply determines the remedy and jurisdiction in the first instance. It denies a litigant no right based upon any theory, either legal or equitable, for if a claimant is dissatisfied with the ultimate outcome of his litigation in probate court the new code gives the district court on appeal the same general jurisdiction and power, as though the controversy had been directly commenced by action or proceeding therein and as though it would have had original jurisdiction of the action. (G. S. 1941 Supp., 59-2408 [now G. S. 1949, 59-2408].)" (p. 849.)

In addition to the cases cited in *Egnatic v. Wollard,* supra, for the above proposition, *Asendorf v. Asendorf,* 162 Kan. 310, 313, 176 P. 2d 535; and *Hoard v. The Home State Bank,* 176 Kan. 624, 272 P. 2d 1054, are in point.

The foregoing rule is fortified by the well-established rule that even in cases where there is concurrent jurisdiction, the court which first acquires jurisdiction retains it to the exclusion of another court which seeks to assume it. (*Egnatic v. Wollard,* supra, including authorities cited therein; *Charvat v. Moore,* 167 Kan. 336, 339, 205 P. 2d 980; *Searight v. Chor,* supra; and *Hoard v. The Home State Bank,* supra.)

The following sections of the probate code relate to liens upon property of a decedent. G. S. 1949, 59-2239, known as the nonclaim statute, provides in part:

". . . No creditor shall have any claim against or lien upon the property of a decedent *other than liens existing at the date of his death,* unless an executor or administrator of his estate has been appointed within one year after the death of the decedent and such creditor shall have exhibited his demand in the manner and within the time herein prescribed. . . ." (Emphasis added.)

G. S. 1949, 59-1303 reads:

"When a claimant holds any security for his demand, it may be allowed, conditioned upon the claimant surrendering the security or upon the claimant exhausting the security; it shall be allowed for the full amount found to be due if the security has been surrendered, or for any remaining amount found to be due if the security has been exhausted."

See also the provisions of G. S. 1949, 59-2238 (*Searight v. Chor,* supra); G. S. 1961 Supp., 59-2238, indicating the change made by the legislature in 1951; G. S. 1949, 59-1301 and 59-1304 (*In re Estate of Cline,* 170 Kan. 496, 227 P. 2d 157).

It has been held that the last sentence of 59-2238, *supra,* now appearing as G. S. 1961 Supp., 59-2238 (3), was intended by the legislature to confer jurisdiction on the district court to render original judgments only on the kind and character of demands over which that court now retains original jurisdiction under the provisions of the probate code. (*Searight v. Chor,* supra, p. 275; and see *Egnatic v. Wollard,* supra, p. 856.)

The word "demands" as used in the nonclaim statute (59-2239, *supra*) was before the court for consideration in *Burns v. Drake,* supra. There an action was filed in the district court against a decedent's estate, in process of administration, for specific performance of an oral contract, alleged to have been made by the decedent, to convey by deed or will real property which was part of the decedent's estate. This was held to constitute a demand within the meaning of the nonclaim statute over which the probate court had exclusive original jurisdiction, and the trial court's order sustaining a demurrer to the petition filed in the district court was affirmed. In the opinion it was said:

"We cannot agree that the word 'demands' refers solely to claims to be paid in money. In view of the fundamental purposes sought to be accomplished by the new code we think the legislature intended the term 'demands' as here used to be all-inclusive—to include all demands against the estate, whether legal or equitable in character, except in particular cases where the statute may expressly provide otherwise. All property in the estate is drawn into administration. Upon final settlement the court must determine the heirs, devisees, legatees, and by decree make proper assignment. The determination of an issue such as that here involved is as much a prerequisite to distribution as any money demand. To hold otherwise would defeat one of the purposes of the code—the plain legislative intent to unify administration and expedite the closing of decedents' estates." (p. 371.)

In *Leidigh & Havens Lumber Co. v. Wyatt,* 153 Kan. 214, 109 P. 2d 87, the court had before it the foreclosure of a statutory materialman's lien (G. S. 1949, 60-1401). Upon review of the applicable provisions of the new probate code it was held, under the express statutory provision as it appeared in G. S. 1949, 59-2238, that action in the district court against the administratrix to foreclose the lien is considered a demand legally exhibited against the decedent's estate from the time the original process is served on the adminis-

tratrix. The materialman's lien constituted security for the plaintiff's money demand against the estate. In the opinion, after quoting from 59-2239, *supra,* it was said:

"In the instant case *the liens on this specific real estate existed prior to decedent's death* and the lien claimants were not precluded from enforcing their security by appropriate actions in the district court. . . ." (p. 218.) (Emphasis added.)

In *Egnatic v. Wollard,* supra, the court indicated that 59-1303, *supra,* was what the legislature had in mind when it authorized action in the district court under 59-2238, *supra,* as it appeared prior to the change in 1951. In the opinion the court went on to say:

". . . If a claimant sees fit to surrender his security he may file his claim in probate court and have it allowed for the full amount. If he chooses to exhaust his security he may do so by an action filed in district court to foreclose his lien. If the property sold under that proceeding is insufficient to pay the full amount the district court is given the power to render a deficiency judgment for the remaining amount it finds to be due and such amount shall be considered a demand legally exhibited against the executor or administrator from the time of the original service of summons upon him." (p. 854.)

In further discussing 59-2238, *supra,* the court said, applicable rules of statutory construction justified the conclusion that this section of the code applies solely to a situation where the code makes no express or adequate provision for the establishment of a demand in the probate court.

It will be noted from the foregoing language that no distinction was indicated between liens upon real property and liens upon personal property, or chattel mortgages. The only case which our research has disclosed concerning the enforcement of a lien on a decedent's personal property against an administrator in the district court, while the administration of the decedent's estate was pending in the probate court, is *Grinnell State Bank v. Fellhoelter,* 153 Kan. 554, 112 P. 2d 116. This action, however, did not arise under the new probate code. There the decedent was a shareholder in an insolvent bank, and an action was begun to recover for the so-called double liability imposed by statute (then G. S. 1935, 9-110) on stockholders of insolvent banks. By another provision of statute such liability became a lien on the property of the stockholder for its satisfaction (then G. S. 1935, 9-156). Under the old probate code it was held the district court had jurisdiction to maintain the action, although reference was made to the new statutory provision applicable to demands arising from or out of any statutory liability of a decedent in G. S. 1949, 59-2239.

Another rule to which our attention must be focused is expressed in the case of *In re Estate of Thompson,* 164 Kan. 518, 190 P. 2d 879, where numerous authorities are reviewed and classified as to whether jurisdiction of a matter concerning a decedent's estate is in the probate court or in the district court. Reference is made to pages 522 and 523 which are incorporated herein by reference. Summarizing, the rule may be stated as follows:

Generally speaking, when the purpose of an action or claim is to get something out of an estate of a decedent, the probate court has exclusive original jurisdiction of the matter and the action or claim must be filed in the probate court (*In re Estate of Thompson,* supra; *Gebers v. Marquart,* 166 Kan. 604, 608, 203 P. 2d 125; *Rowe v. Childers,* 169 Kan. 616, 219 P. 2d 1066; and *In re Estate of Weaver,* 175 Kan. 284, 287, 262 P. 2d 818); but when the purpose of an action or claim is to bring something into an estate of a decedent, that is, when an estate has a claim which its personal representative is attempting to enforce, the action is to be filed in the district court or some other court of competent jurisdiction (*In re Estate of Thompson,* supra; *In re Estate of Weaver,* supra; *Coffey v. Shrope,* 180 Kan. 621, 306 P. 2d 164; and *Hildenbrand v. Brand,* 183 Kan. 414, 327 P. 2d 887).

Turning now to the facts in the case at bar, the appellants are holders of a promissory note. They are seeking *to establish the existence of an equitable mortgage* on personal property based upon the promissory note and the letter from Eric E. Smith, the decedent's attorney, to Dan B. Shields dated September 25, 1959. The letter says the decedent *"has made the following arrangements in order to secure your position."* (Emphasis added.) These arrangements were: "Mr. Fink has delivered to this office an assignment of his interest in the Heim oil and gas lease located in Russell County, Kansas, and *has instructed me to record the assignment in your name in the event of his death prior to his making full payment of the loan including interest."* (Emphasis added.)

The assignee's name in the document, alleged to be an assignment, was left blank and it was not acknowledged by the decedent. It was never filed or recorded with the register of deeds of Russell County after the decedent's death by Eric E. Smith as he wrote he was instructed to do.

Any mortgage on the decedent's interest in the oil and gas lease in question, which is personal property, is subject to the Kansas

chattel mortgage statute, G. S. 1949, 58-301, which insofar as material herein reads:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds of the county in which the mortgagor resides, . . ."

In the absence of stipulations to the contrary, under G. S. 1949, 58-307, the mortgagee of personal property shall have the legal title thereto, and the right of possession. The right of the mortgagee to sell the property after condition broken is authorized by G. S. 1949, 58-309, in accordance with the conditions stated. (See *Foy v. Comanche County*, 69 Kan. 206, 76 Pac. 859; *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130; and authorities annotated under the foregoing statutory sections.)

On the facts in the instant case the executrix has not only the possession but also the legal title to the personal property in question. The petition alleges the purported assignment has never been recorded and, not being acknowledged, is not subject to recording.

The appellants admit that neither the letter written by Smith "nor the facts and circumstances surrounding the transaction could be construed as a sale because it lacks the statutory prerequisites for a testamentary disposition." Under G. S. 1949, 59-606, cited by the appellants, a testamentary document must be signed at the end by the testator, or some other person at his direction, and the execution must be witnessed by two or more competent witnesses who saw the testator subscribe to it or heard him acknowledge the instrument.

Whether the facts alleged in the petition herein give rise to an equitable mortgage is a question we leave open.

As we construe the allegations of the petition, and in particular the letter dated September 25, 1959, from Smith to Shields, there was no intention on the part of the decedent to give the appellants any interest in the oil and gas lease here in question *prior to his death*. In other words, the equitable lien here in question, if it exists at all, was not in existence at the time of the decedent's death. The appellants admit in their brief: "Unless they take some action *to establish their specific claim to the property*, it is subject to sale to satisfy the claims of general creditors." (Emphasis added.)

We construe the probate code, and the decisions interpreting it, to require *the existence of a lien upon specific property of the decedent at the date of his death*, before the lien claimant is entitled to proceed in the first instance in the district court to exhaust his security. (G. S. 1961 Supp., 59-2238 [2]; G. S. 1949, 59-1303; and *Leidigh & Havens Lumber Co. v. Wyatt*, supra.)

Under 59-2239, *supra*, the probate court is given exclusive original jurisdiction concerning the *establishment of liens which do not exist at the date of the decedent's death.* This section of the code provides in substance that *no creditor shall have a lien upon property of the decedent*, other than liens existing at the date of his death, *unless an executor or administrator of his estate has been appointed and such creditor shall have exhibited his demand in the probate court in the manner and within the time prescribed.*

It may be said the facts in the instant case are somewhat analogous to the situation presented in *Burns v. Drake*, supra, where it was held the claimant should have proceeded initially in the probate court to establish his claim for specific performance of an oral contract to convey by deed or will real property which was part of the decedent's estate. There, as here, the claimant was attempting *to get property out of the decedent's estate* by virtue of an oral contract made with the decedent in his lifetime.

Before the appellants in the instant case are entitled to have the personal property in question subjected to the payment of their claim, they must first *establish* the existence of a lien against such property. This is a contingent claim or demand. It is contingent upon a question of law, and if the matter is eventually tried in the probate court, it may further prove to be contingent upon a question of fact. (See G. S. 1949, 59-2241.)

The wisdom of the legislature in granting exclusive original jurisdiction to the probate court regarding the establishment of liens against property of the decedent, which are not in existence at the date of the decedent's death, is indicated by the logic of the situation herein presented.

If the decedent's estate is not insolvent, the assertion of the indebtedness of $12,000, evidenced by the promissory note, as a claim timely filed against the estate would probably be sufficient. But the appellants could, and in the event the estate is insolvent should, within time assert their claim to a lien on the property in question, and thus assert their right, if established, to have the

property subjected to the payment of the debt. The probate court under its equitable powers could hear the matter, upon compliance with G. S. 1949, 59-2237, and apply the provisions of G. S. 1949, 59-1303, 59-1304, and other applicable sections of the probate code, and make such orders as may be necessary to fully determine the matter and expedite administration of the estate. (See *In re Estate of Cline,* supra.) Under these circumstances the probate court is a proper forum in which the lien claimants could exhaust their security.

Here the property for which the appellants seek the appointment of a receiver in the district court is already in the hands of a fiduciary, the executrix of the decedent's estate, who is subject to the direction of the probate court for the administration of the personal property in question. This amounts to a considerable savings in expense to the litigants.

In any event, should it appear in a proceeding pending in the probate court that a decision upon any question of which the probate court does not have jurisdiction is necessary to a full determination of the proceeding, the provisions of G. S. 1949, 59-2402, authorize transfer of the matter to the district court having appellate jurisdiction, which court shall proceed the same as though an action involving that question had been filed originally therein.

Under G. S. 1961 Supp., 59-2402a, demands over $500 in value, among other matters, may be transferred to the district court upon request of any interested party, and such issues shall thereupon be heard and determined in the district court as on appeal as provided by G. S. 1949, 59-2408. (G. S. 1949, 59-2402b.)

In conclusion, therefore, we hold the trial court properly sustained a demurrer to the petition filed in the district court of Russell County, Kansas, by the appellants, and the court did not err in its refusal to appoint a receiver.

The judgment of the lower court is affirmed.