No. 37,437

GLENN WETZEL, BERTHA WETZEL, FAYE BLAIR, MAUDE BROOKS, M. C. BROOKS and SARAH WETZEL, *Appellants,* v. GUY WETZEL, JIM ETHEL WETZEL, HARRY O. WETZEL, MABEL GOES and E. L. GOES, *Appellees.*

(204 P. 2d 768)

Opinion filed April 9, 1949.

*Chester Stevens,* of Independence, argued the case and was on the briefs for the appellants.

*A. L. Foster,* of Parsons, was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action wherein the plaintiffs sought to adjudicate the title to real estate. Judgment was for defendants, dismissing the petition. The plaintiffs have appealed.

In the interest of clarity a statement as to parties will be made at the outset. The story starts with the death of Frank Wetzel about June 2, 1937. At the time of his death intestate he owned a quarter section, which was the homestead of himself and his wife, Fannie. They also owned an eighty as tenants in common. He left as his heirs his widow, Fannie, and six children. Thus Fannie inherited an undivided one-half of the quarter and each of the children an undivided one-twelfth. As to the eighty, Fannie owned twelve twenty-fourths and inherited six twenty-fourths, thus she owned eighteen twenty-fourths and each of the children one twenty-fourth. The children are Mabel Goes, Faye Blair, Maude Brooks, Harry O. Wetzel, Glenn Wetzel and Guy Wetzel. This litigation is between Glenn, Faye, Maude and Sarah, plaintiffs, and Guy,

Harry and Mabel, defendants, Harry being on one side apparently and his wife Sarah on the other. After the formal allegations, the petition set out the above facts as to the interests of the parties. It then alleged the death of Fannie, the mother, on May 4, 1945, and that shortly after the death of Frank Wetzel on June 8, 1937, Guy made an oral proposal to Harry, Mabel and Bertha and their spouses, in substance that all of the children would join in a quitclaim deed to all the real estate to their mother Fannie, conveying to her a life estate in all of it, so that she would always have a home and upon her death all of it would belong to the six children and be divided equally among them; and that later he made the same proposal to Maude and her spouse; that this proposal was accepted by all of them and Guy stated· he would prepare a quitclaim deed accordingly; that he did prepare such a deed and presented it to each of the children and it was executed and acknowledged by each of· them and their respective spouses, after Guy had again explained the agreement to them; that the deed was delivered to Fannie and recorded by her. The petition then alleged that Fannie had full knowledge of the proposal and knew that the children had agreed to give her a life estate only and that upon her death all of the 240 acres would become the property in fee simple of the children in equal shares; that she paid no consideration for the quitclaim deed and the conveyances by the children of their interest in the real estate, pursuant to the oral contract, was for her benefit, and she accepted the quitclaim deed, subject to the oral contract, and it was a binding contract upon her and upon the children, and she knew she had only a life estate in all of the real estate; that after the delivery of the quitclaim deed to Fannie and about April 14, 1938, in violation of the contract and without the consent of the other children Guy obtained from Fannie a warranty deed conveying to him the entire quarter section and an undivided three-fourths of the eighty and that after the death of Fannie, Guy claimed and was then claiming all of the real estate, by which claim the other children were denied their share, pursuant to the contract; that the death of Fannie terminated her life estate and all the children became on her death owners in equal shares of the vested remainder; that the plaintiffs were entitled to have their contract enforced by having the warranty deed to Guy canceled and Guy and his wife should be ordered to deliver

deeds to the other children. A second cause of action alleged facts in addition to the first cause of action and that relying upon Guy's promise to prepare a deed pursuant to the contract the other children signed it without examining it and it referred in no way to the life estate and did not convey the eighty and the deed should be reformed. The third cause of action alleged that if the warranty deed was not adjudged void Guy should be held to have taken the property in trust as trustee for himself and the other children and the court should decree the trust and adjudge the children to be the owners of the property in equal shares. The fourth was a petition for partition of the real estate. The fifth was for an accounting. Judgment was asked on each of the causes of action, as demanded. The petition further alleged that Harry and Mabel had refused to join the action as plaintiffs and had been made defendants.

Guy, the main defendant, filed a motion to dismiss the action on the grounds of want of jurisdiction of the district court. On the hearing of this motion exhibits of proceedings in the probate court involving this same real estate and the same parties were introduced.

This motion alleged that December 4th on his own motion Glenn Wetzel was appointed and had been acting administrator of the estate of Fannie; that the administration was not completed and the probate court was exercising original and exclusive jurisdiction of the estate and it was in the process of administration when the action in district court was filed November 3, 1948; that January 2, 1946, Glenn, acting as administrator, went upon the real estate, inventoried it and caused it to be appraised as an asset of the estate; that January 31, 1946, Guy filed in the estate his petition asserting his ownership of the entire quarter section and an undivided eighteen twenty-fourths of the eighty; that on March 25, 1946, the probate court entered its judgment that Guy was the owner in fee simple of the quarter section and of eighteen twenty-fourths of the eighty; that from such judgment Glenn, as administrator, and Faye, Maude and Glenn had appealed to the district court and the cause was then on the civil docket of that court, undetermined.

The final paragraph of the motion alleged that the district court was without jurisdiction of the subject matter of the action until the jurisdiction over it of the probate court had ceased; that the probate court had original and exclusive jurisdiction over the subject matter until the appeal from the probate court to the district

court was dismissed or terminated adversely to the appellants or until the administration of Fannie's estate had been terminated.

On the hearing of this motion to dismiss most of the files in the probate court of the estate of Fannie Wetzel were introduced. They throw considerable light on the arguments of counsel and the holding of the trial court, so they will be noted now.

November 6, 1945, there was filed the verified petition of Glenn, alleging Fannie's death intestate, having real property of the value of $5,000 and personal property of the probable value of $800, naming the heirs, and that administration was necessary to preserve the property; next was filed the inventory of Glenn, the administrator, including the quarter section and the undivided three-fourths interest in the eighty; next on January 1, 1946, a petition by Guy.

In this petition he alleged first his relationship to Fannie; then that at all times since her death he had been the absolute owner and in possession of the quarter section and an undivided eighteen twenty-fourths of the eighty and he was the owner of an additional one twenty-fourth of the eighty but raised no issue about it at that time; that about January 2, Glenn, as administrator, went upon the premises with the appraisers and represented to them that Fannie died seized of the real estate in question and caused to be made and filed an inventory of the estate, including this real estate; that this cast a cloud upon his title to it; that the other five children claimed some interest in it; that he was entitled to an order striking from the inventory all reference to it and to an order prohibiting the administrator from asserting any jurisdiction over it; and quieting his title to it against the claims of Glenn, as administrator, or of any of the five children. An order was prayed fixing a time and place of the hearing and for an order pursuant to the allegations of the petition.

To this petition, Glenn answered denying first Guy's ownership and alleging that if he had any interest it was in the nature of a mortgage. The answer prayed that he be put on strict proof of the allegations of his petition.

On the hearing of this action Guy appeared in person and by his attorney and Harry, Faye, Mabel and Maude were present in court.

The court found that proper notice had been given; that evidence had been introduced and that the allegations of Guy's petition were true; that he was the owner of the fee simple title to the land in question; the other children were enjoined from interfering with his

possession; all reference to the real estate was ordered stricken from the inventory and Guy's title was quieted against the claims of the other children; Faye, Maude and Glenn appealed from this order to the district court. The appeal was filed April 23, 1946.

After the appeals from the probate court to the district court were docketed, Faye, Maude and Glenn filed motions to require Guy to make his petition more definite and certain by setting out the muniments of title whereby he obtained title to the real estate. He complied January 31, 1947, by referring to the warranty deed from his mother to himself of April 4, 1938, and attaching a copy, to which reference has already been made in this opinion.

From then on until August 3, 1948, the record in the district court in the case that was appealed from probate court consists of amended petitions and answers, by which the two groups framed issues raising substantially identical issues that were set out in the petition in district court that has already been set out here, that is, Glenn, the administrator, and the brothers and sisters who are on his side alleged the oral contract with their mother and all the children on account of which the quitclaim deed was given and which entitled her to a life estate only, and Guy on the other hand denied the contract and raised the defenses of the statute of limitations and the statute of frauds and the jurisdiction of the probate court.

On March 23, 1948, the motion of Guy to dismiss this action in district court was sustained and the action was dismissed because the court did not have jurisdiction. This appeal is from that order of dismissal. Soon after this motion to dismiss was sustained Guy filed his second amended reply to Faye, Maude and Glenn, wherein he attacked the jurisdiction of the probate court. As already noted, however, nothing further has been done in that cause. It stands on the docket of the district court.

The first specification of error is that the trial court erred in sustaining Guy's motion to dismiss the action for want of jurisdiction. The questions involved are stated as the extent and limitation of the jurisdiction of probate courts over estates of decedents involving real property, extent of and limitations on the jurisdiction of district courts on appeal from probate courts and the original and exclusive jurisdiction of the district courts for reformation of deeds, specific performance, adjudging a trust, and for partition and accounting of rents and profits.

There can be no question but that the probate proceedings in the estate of Fannie Wetzel were under way when this action in district court was filed. Guy Wetzel argues the court was correct in dismissing the action because it was one of which the probate court has exclusive original jurisdiction. He cites and relies on *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438, where we said:

"From the various provisions of the code it clearly appears the probate court had original and exclusive jurisdiction, not only of the personalty but also of all real property which belonged to decedent's estate. It was exercising that jurisdiction at the time the instant action was filed. Under the law it was required to determine and describe the property and to state the proportion or part thereof to which each heir, devisee and legatee was entitled, and that decree was binding as to *all of the estate* of the decedent, whether specifically described in the proceedings or not." (p. 269.)

See, also, *Burns v. Drake*, 157 Kan. 367, 139 P. 2d 386; *Egnatic v. Wollard*, 156 Kan. 843, 137 P. 2d 188.

Glenn, on the other hand, first points out Guy's statement in his first petition in probate court "That at all times since the death of petitioner's mother he has been the sole, separate, and absolute owner of and in possession of" the land in question and argues that this is really an admission that the position of the other children is the correct one, that is, that Fannie had a life estate in the real estate. He then points out Guy's position that Fannie had conveyed to him all her interest in the real estate and when this was made to appear in probate court the only valid judgment the probate court could render on the petition was to strike the real estate from the inventory and appraisement as prayed for in Guy's petition. Glenn argues that since Fannie by either theory did not have any interest in the real estate other than her life estate, which terminated with her death, the real estate constituted no part of her estate, the probate court had no jurisdiction and its judgment was void.

It may be conceded that Guy in his first petition filed in probate court alleged that he held the real estate by a warranty deed given him by his mother during her lifetime. This is somewhat inconsistent with his allegation that he had owned it since her death but we are not concerned with that here. He did come into probate court and ask the court to consider and pass on his claim to ownership. The pleadings in probate court were not as full and complete as those afterwards filed in district court but nevertheless the probate court was asked to consider and pass on the effect and validity

of the quitclaim deed of the other children and his mother's warranty deed to him.

In the same proceedings Glenn, the plaintiff in this action, had gone into probate court and asked to be appointed administrator, was appointed administrator and as administrator made the real estate with which we are concerned a part of the inventory. Thus at the outset all interested parties submitted to the jurisdiction of the probate court. Had Guy not appeared and pleaded his ownership of the real estate there can be no doubt but that the probate court would have had jurisdiction to proceed with the administration of the estate, which would have included determining the share thereof to which each heir was entitled. (See G. S. 1947 Supp. 59-2249.) The fact that Guy made his appearance in probate court and pleaded that the land was no part of Fannie's estate did not deprive the court of jurisdiction. The fact is that Guy in his very first petition filed in the probate court, while he did not set out the warranty deed to his mother, set out facts and asked for relief which made it necessary for the probate court to pass on the effect of that deed, as well as the deed from all the children to their mother. In fact, he asked the probate court for affirmative relief in that petition. It follows that the entire matter in dispute between these parties may be adjudicated in probate court and once these proceedings were under way must be carried to a final determination, either there or on appeal to the district court. (See *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438.)

Appellants here next argue that the district court does not have on appeal from the probate court jurisdiction to make additional parties, impress and decree a trust, reform a deed or to decide a case involving the statute of frauds, such as they argue is necessary here. The statute providing for such appeals is G. S. 1947 Supp. 59-2408. It provides as follows:

"Upon the filing of the transcript the district court, without unnecessary delay, shall proceed to hear and determine the appeal, and in doing so shall have and exercise the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court and as though such court would have had original jurisdiction of the matter. The district court shall allow and may require pleadings to be filed or amended. The right to file new pleadings shall not be abridged or restricted by the pleadings filed, or by failure to file pleadings, in the probate court; nor shall the trial in, or the issues to be considered by, the district court be abridged or restricted by any failure to appear or by the evidence introduced, or the absence or insufficiency thereof, in the probate court."

Counsel for appellants remarks that it is very difficult to distinguish between the appellate jurisdiction and the original jurisdiction conferred on district courts on appeal from the probate courts. He argues, however, that the pleadings filed here after the appeal was taken went beyond the broad powers so conferred. This point is not well taken. The answer to this argument lies in G. S. 1947 Supp. 59-301 (3), (12). That section provides, in part, as follows:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction: . . . (3) To direct and control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates . . . (12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

The determination of whether the real estate in question was a part of Fannie's estate had to be decided before the probate court could proceed with the administration of her estate. That court did hear and determine it. An appeal was taken and in the district court, pursuant to the appeal statute, the district court proceeded to allow the filing of additional pleadings and amendments to those already filed. After all this is done, however, the district court will proceed to hear and determine the controversy as though it had been commenced in that court. The fundamental issue was not changed in any respect by the pleadings filed in district court.

Appellants next argue that the fundamental law with reference to the jurisdiction of district courts is such that the matters at issue here could only be adjudicated in district court. What has already been said here disposes of that argument.

As we have heretofore pointed out in this opinion, all of the issues may be decided in the case that has been appealed to the district court from the probate court.

The judgment of the trial court is affirmed.

ARN, J., not sitting.